# THE UNITED STATES, *Respondent, v.* GEORGE REYNOLDS, *Appellant.*

(See same case ante page 226.)

NUMBER OF GRAND JURY.—People *v.* Reynolds ante affirmed as to the number necessary to constitute a Grand Jury.

DRAWING A GRAND JURY.—Under the Poland Bill requiring the Judge of the District Court to give public notice of the drawing of a jury it is not necessary to give notice thereof by publication in a newspaper—any public notice is sufficient.

QUALIFICATIONS OF JURORS.—On the trial of the Defendant charged with the crime of polygamy, a juror under examination as to his qualifications to serve, was asked the following question : " Are you living in polygamy ?" which, under the caution of the Court he declined to answer, as the answer would tend to criminate him; *held,* that the juror virtually admitted the fact, and it was not necessary that his disqualification should be shown by extrinsic evidence.

*Held,* further—that the juror was properly excluded from the panel.

OPINION OF A JUROR.—A juror who has formed an opinion as to the guilt or innocence of the deceased, but says that such opinion would not influence his verdict, is a competent juror, no other facts being shown.

Testimony of a Witness on a Former Trial.—Where it appears that a witness who testified on the former trial has concealed herself by the aid of Defendant, it is competent for the Court to allow evidence of her former testimony to go to the jury.

Instructions.—On the trial of Defendant for polygamy the Court, among other things told the jury that they "Should consider what are to be the consequences to the innocent victims of the delusion;" *held*, not erroneous.

Appeal from the Third District Court.

The facts are stated in the Opinion of the Court.

*Williams & Young, Sheeks & Rawlins*, for Appellant.

*S. Howard, U. S. Attorney*, for the People.

Boreman, J., delivered the Opinion of the Court:

The Defendant was indicted for the crime of bigamy or polygamy, found guilty and sentenced to imprisonment in the penitentiary, and to pay a fine. He appeals to this Court.

The Defendant filed his various pleas in abatement. The first plea raised the question of the proper number to constitute a Grand Jury, it being contended by the Defendant that it should have been composed of any number from sixteen to twenty-three, and not of the number of fifteen members. This question has been heretofore at a former term, decided by this Court in the matter of indictment of this very defendant for this very crime. It was upon the hearing of that case at that time in this Court, strenuously contended by the Defendant, that fifteen was the proper number to constitute a Grand Jury, and in that veiw this Court coincided. He now comes into Court when an indictment has been found against him by a Grand Jury formed in accordance with that ruling, and says that such a Grand Jury is illegal. The Court cannot have much respect for his sincerity of purpose in pursuing a course deemed very reprehensible.

The action of the Court below upon the second plea was proper. The drawing of the Grand Jury was in pursuance of the order of the Judge made therefor, and

the Court being one of general jurisdiction, it is presumed, nothing to the contrary having been shown, that it acted correctly and in accordance with law. The proof, however, which we do not think it was necessary to make, shows affirmatively that all the requirements of the law were strictly complied with. The law required the Judge to give public notice of the intended drawing. It was not necessary that this should be published in a newspaper, but it was done in this case. The notice was certainly sufficient, as all that the law requires is a public notice by the Judge.

It is alleged as error that the Court below, sustained the challenge of the prosecution to the several jurors who appeared to be otherwise qualified, but who refused to answer a question to criminate themselves. The question was asked as follows : "Are you living in polygamy ? "

The Court cautioned the jurors that they need not answer, if the answer would tend to criminate them. They declined, upon that ground, to answer. The inevitable conclusion is that these jurors were guilty of the crime of polygamy. This is not like asking a juror on a trial for larceny, whether he had stolen anything, or on a trial for murder, if he had ever committed murder. The question is not, "Did you ever commit the crime of polygamy ? " But it was, "Are you now doing so ? " They virtually admit that they are. Would such men make impartial jurors, or such as the law requires ? They cannot be such if they are at that very moment practicing the same crime as that charged upon the prisoner. A murderer will never be convicted, if those engaged in committing murder are the jurors—they cannot be impartial, and it was not necessary that the disqualification of the jurors should be shown by extrinsic evidence, when they, in effect, admitted it themselves.

The refusal of the Court below to sustain the Defendant's challenge to the juror, George Read, is assigned for error. The juror said that he had formed an opinion as to the guilt or innocence of the accused, but he

41

did not think that opinion was such as to influence his
verdict.    There was nothing shown either by the juror
or by his extrinsic testimony to give the Court any idea
of the character or nature of the opinion.    The Court,
therefore, took the juror's statement as true, that the
"opinion was not such as to influence his verdict."    The
opinion may have been from indefinite rumor, and
amounted to nothing above a vague supposition.    It
would have been very easy to have asked the character
or nature of the opinion.    It not having been done, we
can see no error in the acceptance of the juror by the
Court.

The record sufficiently shows the finding of the in-
dictment.    The endorsment shows it clearly.    It would
have been improper for the record book to have dis-
closed the name of the Defendant, as he was not then
under arrest.

A witness named Amelia Jane Scofield had given
testimony upon the former trial of the Defendant for the
same crime.    But when the trial of the case at bar
came on she could not be found.    She was a resident at
the house of the Defendant, but when sought there by
the officer, it was said that she was not at home.    De-
fendant told the officer that she would not appear in the
case, and he refused to tell where she was.    It is true
that the Defendant was not required by law to aid the
prosecution in supplying witnesses against himself, but
in his effort to avail himself of such right, he went to
the extent of showing that he was favoring and aiding
in her concealment, and endeavering to thwart the efforts
of the officers of the law, to procure her presence as a
witness.    In such a case he has no right to complain if
the Court allows the next best evidence to be introduced,
and the proof of her former testimony to go to the jury.
On the former trial she was under oath and subject to
cross-examination by the defendant, and then he was
confronted by the witness.    The main objects of pro-
ducing the witness upon the stand had been attained,
and no rights of his were violated by the proof on this
trial of her testimony upon the former trial.

There was no error in the refusal of the Court below to strike out the testimony of Hamilton Gamble. It is not an uncommon practice for attorneys in identifying a party to point to him and ask the witness, whether that is the man referred to, especially when the witness is unfriendly to the side upon which he is called to testify.

The last alleged error assigned by the Defendant was respecting a portion of the instructions to the jury, it being claimed by the Defendant that the Court was wrong in telling the jury that they "should consider what are to be the consequences to the innocent victims of this delusion." There is nothing whatever in this language to warrant the supposition that the jury might believe that they could convict upon anything but the facts. We are unable to comprehend in the language thus objected to anything beyond a caution to the jury to give earnest and careful consideration to the case. It is of a like nature with a caution sometimes given to a jury, to remember their oath, and such like matters. There was therefore no impropriety in the language used by the Court, but it was in all respects proper, especially when we remember that some of the jurors might have been supposed to be of the opinion that this was not a great crime, the doctrine that polygamy is right having been shamelessly preached and proclaimed and practiced in this Territory from its first settlement to the present time, in defiance of the statute of the United States against crime, and especially, too, when we remember that this crime has a blighting and blasting influence upon the consciences of all whom it touches, as is everywhere witnessed throughout this Territory.

Upon the whole case, therefore, we can perceive that no error was committed in the Court below. It is therefore ordered that the judgment of the Court below be affirmed.

SCHAEFFER, C. J. and EMERSON, J., concurred.